## L. J. D. YOUNG v. STATE.

No. A-2003.   Opinion Filed June 23, 1914.

(141 Pac. 285.)

1. **HOMICIDE—Plea of Self-Defense—Availability—Aggressor.** One who seeks and brings on an affray cannot shield himself under a plea of self-defense.

2. **SAME—Harmless Error—Instructions.** Error, if any, in instructions defining the law of self-defense could not be prejudicial to the defendant, where the evidence did not justify instructions on self-defense.

(Syllabus by the Court.)

*Appeal from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

L. J. D. Young was convicted of assault with intent to kill, and appeals. Affirmed.

*Crawford & Bolen,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J.   This appeal is from a judgment of the district court of Pontotoc county, rendered on the 21st day of November, 1912, upon a verdict convicting the defendant of the crime of assault with intent to kill by shooting one Anthony Roe. The jury failed to agree on the punishment, and the court sentenced the defendant to be imprisoned in the penitentiary for a term of two years and six months.

The evidence shows that Anthony Roe and the defendant were negroes, and that about dusk on the 30th day of April, 1912, the defendant shot at Anthony Roe four or five times, hitting him in the back twice, and once in the hand.

The evidence for the state, briefly stated, was as follows:

Anthony Roe testified that he was standing near the colored school, talking to Peter Nail, when the defendant came up with a petition for his appointment as teacher at the school,

and said, "Roe, sign this, I want to get this school, and want you to sign it;" and he said to defendant, "I have not got any children to go to school, and I hadn't no right to sign it;" and the defendant said, "You told the county superintendent up in his office that I was not fit to teach this school;" and he said to him, "No, I have not been in the county superintendent's office to say anything about it whatever;" and after other words defendant said, "God damn you, I am going to kill you," and pulled his gun; that he ran and the defendant shot him. He further testified that he did not have anything in his hand nor did he attempt to strike the defendant.

Peter Nail testified: That he was standing talking to Roe when the defendant came up and handed Roe the paper and asked him to sign it. His testimony as to what was said is substantially the same as that of the witness Roe. That, closing the conversation, the defendant said to Roe, "You have been meddling with me long enough; now, God damn you, I am going to kill you;" and Roe started to run, and the defendant commenced shooting at him, and fired five shots. On cross-examination he testified that, when Roe handed the petition back, the defendant pulled his gun and said, "I am going to kill you;" that Roe was running from him when he fired the shots; that Roe did not strike at him with a knife, or with his hand; and that he did not see Joe Lewis and Felix Alexander there either before or after the shooting.

On behalf of the defense, Joe Lewis testified that he was coming up town with Felix Alexander, and saw the defendant, Young, and Roe standing talking; that he could not hear what was said, but saw Roe strike at the defendant, and there was something shiny in his hand; that Roe stood facing the defendant while the three or four shots were fired, and the defendant was running from him as he shot. On cross-examination he stated that he did not testify as a witness on the preliminary examination, and did not know whether Roe had on a cap or a hat, or a coat or overcoat, and that he had been convicted of selling whisky in Pontotoc county.

Felix Alexander testified that he saw Young and Roe talking, and some other fellow was there; that he saw Roe strike at the defendant, and the defendant jumped back from him, and the gun popped three or four times. Two or three witnesses testified that the defendant's reputation for being a peaceable, law-abiding negro was good.

The defendant did not take the stand as a witness.

The only errors assigned are based on exceptions taken to the instructions given on the law of self-defense.

Error, if any, was harmless. There is no evidence in the record which would require the submission of the question of self-defense to the jury.

Before one can justify an assault and battery with a deadly weapon, with intent to kill, he must at least show that there was reasonable grounds for believing that he apprehended imminent danger. The facts, as testified to by the defendant's two witnesses, who claimed to have witnessed the shooting, if true, afforded no justification, and their statement of the occurrence is clearly impeached by the undisputed facts. In fact, it is undisputed that the shooting was without even a plausible pretext of provocation. One who seeks and brings on an affray cannot shield himself under a plea of self-defense.

We find no error in the record. The defendant had a fair trial. No injustice was done him by any ruling of the court, nor was injustice done him by the verdict of the jury.

The judgment of conviction is therefore affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.